## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **Moses Langford** ) | |
| ) | |
| **Plaintiff,** ) | **CASE NO.** |
| **vs.** ) | |
| ) | |
| **Magnolia Advanced Materials,** ) | |
| **Inc.** ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

_____

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**COMES NOW** Moses Langford (hereinafter "Plaintiff"), Plaintiff in

the above-styled case and files this, his complaint showing the court the

following:

## SUMMARY OF ACTION

1.

This is an action for injunctive relief, damages, and jury trial against

Magnolia Advanced Materials, Inc.  (Hereinafter "Defendant") arising under

the following legal authority:

(1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§ 200e, et seq., and 42 U.S.C § 1981A ("Title VII"); (2) The Civil Rights

Act of 1866, 42 U.S.C. § 1981 ("1981"); (3) Retaliation under 42 U.S.C. § 2000e-(3)(a), and 42 U.S.C. § 1981, <u>Cbocs West, Inc. v. Humphries</u>, 128 S.Ct. 1951 (2008); (4) Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq., ("ADEA"); and Punitive Damages.

## **JURISDICTION**

2.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it involves a federal question arising under the laws of the United States.

## **PARTIES**

3.

Plaintiff is an African-American man over the age of 40. Plaintiff worked for Defendant as a Senior Chemist.

4.

Defendant is a domestic corporation formed under the laws of Georgia. Defendant has 15 or more employees. Defendant's principal place of business is located at 5547 Peachtree Blvd, Chamblee, Georgia 30341-2234. Defendant's registered agent is Richard Wells. The registered agent can be served at 5547 Peachtree Boulevard, Chamblee, Georgia 30341.

5.

Debbie Nash Makita (hereinafter "Debbie") is a Caucasian woman who works for the Defendant. Debbie was Plaintiff's supervisor during all relevant times of this complaint.

## VENUE

6.

Venue in this case is proper under 28 U.S.C. § 139 (b) because Defendant is a legal entity in this judicial district and/or a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## ADMINISTRATIVE REQUIREMENTS

7.

Plaintiff filed a charge of discrimination with the EEOC dated February 4th, 2015 and numbered 410-2015-02042. Plaintiff adopts by reference, and incorporates as if set out verbatim herein, the facts and allegations of said EEOC charge. A copy of the same is attached hereto as Exhibit "A".

8.

Plaintiff received a Notice of Right to Sue dated February 9th, 2015 from the EEOC on or about February 12th, 2015. A copy of the same is attached hereto as Exhibit "B".

9.

This action has been brought within 90 days of Plaintiff's receipt of the Notice of Suite Rights.

**<u>FACTUAL ALLEGATIONS</u>**

10.

Plaintiff started working for Defendant on about September 9th, 2013 as a Senior Chemist. Plaintiff was never given an employee handbook when Plaintiff was hired. Plaintiff signed a Noncompetition, Nonsolicitation, and Nondisclosure Agreement with Defendant on September 9th, 2015.  The agreement is attached as Exhibit C. Plaintiff adopts by reference, and incorporates as if set out verbatim herein, the terms of the agreements as if stated herein.

11.

Exhibit C does not mention anything about Defendant's email policy.
Exhibit C does not forbid Plaintiff from emailing work related documents to
his personal email.

12.

No employee of Defendant has ever told Plaintiff that he could not
forward work related documents to his personal email.

13.

During Plaintiff's employment, his supervisor Debbie has forwarded
work related documents to his personal email address at
moses_langford@att.net. Debbie would forward documents to Plaintiff from
her work email address Debbie.nash-makita@magnolia-adv-mat.com.

14.

On or about February 12th, 2014, Debbie emailed Plaintiff 6 work
documents that contained proprietary information that belong to Defendant.
Debbie emailed this information to Plaintiff's private email address. The
email is attached as Exhibit D. Plaintiff adopts by reference, and
incorporates as if set out verbatim herein, the facts and exhibits attached to
Exhibit D as if stated herein.

15.

On or about May 1st, 2014, Debbie emailed Plaintiff 2 work documents that contained proprietary information that belonged to Defendant. Debbie emailed this information to Plaintiff's private email address. The email is attached as Exhibit E. Plaintiff adopts by reference, and incorporates as if set out verbatim herein, the facts and exhibits attached to Exhibit E as if stated herein.

16.

On or about November 10th, 2014, Debbie emailed Plaintiff 1 work document that contained proprietary information that belonged to Defendant. Debbie emailed this information to Plaintiff's private email address. The email is attached as Exhibit F. Plaintiff adopts by reference, and incorporates as if set out verbatim herein, the facts and exhibits attached to Exhibit F as if stated herein.

17.

Plaintiff started having problems at work and filled a complaint with the EEOC office. Plaintiff explained the following to the EEOC office:

18.

My name is Moses Langford.  I am an employee of Magnolia Advance Materials.  I have been employed there for roughly eleven months as the Senior Chemist on staff.  Initially, my employment with Magnolia was going well until April 2014.

19.

In April 2014, Magnolia was increasing the size and scale of a new D.O.T project that we had worked on in 2013.  It was a new technology to the company, with that new hazardous components as well.  The most dangerous component was an isocyanate.  The isocyanate presents different safety issues for a company that traditionally manufactured epoxies and other adhesives.  The isocyanate is an inhalation hazard that can cause long term respiratory issues after a single exposure.  Leading up to the full scale up day, I voiced my concerns to Debbie Makita-Nash, Director of R & D.  Ms. Makita-Nash stated that "although you have some concerns, Randy wanted to continue scale up because it's a significant portion of the D.O.T business and we have to produce the material".

20.

On the day of the scale up, none of the safety issues were addressed. Magnolia did not provide a medical surveillance program or other recommendations written by OSHA. At this point, Ms. Makita-Nash asked to speak with me in private outside of the building. She stated "Randy said if you call O.S.H.A., then he would fire you". I stated "I never said that I would call O.S.H.A, so where did he get an idea that I would call"? Ms. Makita-Nash stated "I told Randy that I overheard you saying that this was not right and I told Randy that you would call O.S.H.A". So, I went back to work. Around noon that same day, I spoke with Richard Wells-C.E.O and owner of Magnolia. I told him about the potential safety issues with the isocyanate and he immediately stopped production and sent workers to a clinic for medical evaluation. I spoke with Ms. Makita-Nash and she told me to go on O.S.H.A website and print the requirements for the medical surveillance program. The next morning, I spoke with Ms. Makita-Nash and Randy Cunningham-Executive Vice President and General Manager of Magnolia. I told him that I never intended to call O.S.H.A and Ms. Makita-Nash was wrong to make that assumption from conversations that she

overheard in the laboratory.  He agreed and stated "that issue could have been resolved with a conversation".

21.

On May 7, O.S.H.A visited Magnolia.  They stated that an employee call them to inspect potential safety issues.  The O.S.H.A agent said that he was responding to a complaint was for isocyanate and Methyl Ethyl Ketone.  The agent interviewed several employees and provided management with guidance for the medical surveillance program-as well as other programs.  The agent stayed on-site for a few hours and left.

22.

After the O.S.H.A visit, the environment at Magnolia began to change drastically.  I began to receive periodic e-mails from Randy Cunningham about my performance.  Richard Wells refused to speak with me.  I requested to come in late to work so I may attend my son's fifth grade graduation.  This was denied.  I requested to use four hours of vacation time to attend my son's graduation.  I later changed the number of vacation hours to 8 hours since my daughter was graduating from high school that very same day.  As a result of this, Mr. Wells immediately sent a companywide e-

mail stating that all vacation must be approved two weeks prior to using you

vacation time.

23.

In June, I requested four days of vacation. Upon leaving on a Wednesday, I did not send a weekly update to Ms. Makita-Nash. I returned on Wednesday of the next week. Upon returning to work, Ms. Makita-Nash wanted to meet with the entire laboratory staff. At this meeting, Ms. Makita-Nash stated "the owners want to keep the lab in the new building spotless everyday". I stated "it's going to hard to keep the lab spotless". She left the meeting and spoke with Randy. I did not have anything to report for the week since I was on vacation for the bulk of the week. So, I did not send Ms. Makita-Nash a weekly update. On the following Monday morning at 8:00a.m., I received an e-mail to meet with Randy Cunningham and Debbie Makita-Nash. During this meeting, I received a written warning for missing two weeks of weekly updates and for "toned" remarks I made about the lab hygiene. Before the O.S.H.A incident, Randy told me that I scored in the top percentile of employees during my quarterly reviews. After this incident, I received a written counseling and a number of e-mails scrutinizing my performance.

24.

Since then, I receive e-mails twice a week about the details in my weekly update.  Randy stated "we want to see more details in your report as if it were like a scientific report".  Also, Richard Wells sends out companywide e-mails condemning the person who called O.S.H.A.  Mr. Wells e-mails state "if you don't like working for Magnolia, quit and find another job.  Attempting to use the power of the Federal Government to harass Magnolia only works against you.  If you need to leave, grow a pair and leave.  Since I bought control in 2003, there have been six very important people who have left Magnolia and each time they leave, we get stronger.  This will repeat when the disgruntled employee leaves".

25.

The EEOC office gave Plaintiff a Right to Sue relating to the facts stated in paragraphs 18-24 above. However, Plaintiff did not file a lawsuit within the 90 time period. Plaintiff filed another charge with the EEOC because he was fired from his employment. Plaintiff explains the following:

26.

On October 20, 2014, I filed a retaliation claim with the EEOC. Upon receipt of this claim, Randy Cunningham (General manager/Executive Vice President of Magnolia Advanced Materials) and Debbie Nash-Makita (Director of Research and Development) questioned me about the merit of my claim. The questioning ended when I disclosed to them that I had an attorney and Magnolia will be contacted shortly.

27.

In early November, Magnolia had an "exothermic event" to occur in their production facility. The building was immediately evacuated due to massive amounts of smoking that posed a hazard to the employees. At which point, I called 911 to provide medical assistance to employees. Also, I called OSHA and alerted them of the hazardous conditions in Magnolia's facility. Both agencies arrived and assisted employees with air monitoring. Production was shut down for the day.

28.

After this event, Richard Wells (owner of Magnolia Advanced Materials) began to send companywide e-mails about the two exothermic events that occurred over a two month period of time. In the e-mails, Mr.

Wells states that these events could be considered sabotage or an act of terrorism. At which point Mr. Wells stated that he was consulting with law enforcement to investigate the issue. He stated that if an employee is guilty then they should step forward. As a result of these e-mails, I began to forward the e-mails to my personal account and sending to my attorney (Mr. Michael Mondy).

29.

On 11/26/2014, I was experiencing abdominal pains at work. I went to my primary care physician. The doctor sent me to the emergency room for a CT scan because the doctor thought my appendix may rupture. The doctors at Piedmont Henry Medical Center determined that my medical condition was diverticulitis. So, I spent five days in the hospital in order to stabilize my medical condition. Upon returning to work, I was informed that the laboratory was moving to the new building as a result of an anonymous employee calling OSHA. Therefore, I needed to help my colleagues move laboratory equipment and raw materials and prepared them for shipping. At which point, my medical condition began to worsen. I visited my gastro-intestinal doctor and he placed me on work restrictions. I was not allowed to lift any weights until I had a colonoscopy on January 14th.

30.

Two weeks prior to my termination, Randy Cunningham visited the laboratory. He asked me to log out of my computer. He also asked another employee to log out of their computer. After logging out of my computer, Mr. Cunningham personally removed my computer from my desk. He later removed the other employee's computer as well. The next day, I logged on to another network computer in the office. About an hour later, Rick Blake (Head of I.T.) visited the lab and removed the computer that I was working on. As a result, I was without a computer. So, I began to work in Quality Control and assisting other employees.

31.

On the day I was terminated (1/22/2015), Randy Cunningham stated that Rick Wells needed to see me. We met in an office and had a very general conversation. He stated that the F.B.I. wanted to interview me about the two "exothermic events" that had occurred. Afterwards, I was interviewed by the F.B.I., Homeland Security and another government agency. They began to ask me about a real estate rehab corporation I started in December 2013. Also, they began to question me about two e-mails that I sent to my personal account. I stated to them that one of the e-mails was

about a project that I was working on in May 2014. The other e-mail was sent because my attorney asked me to send all pertinent e-mails to my personal account in case I was terminated. After the interview was over, Randy Cunningham asked to see me. At that point, Randy stated that my employment with Magnolia was being terminated for cause. The reason was that I violated my non-disclosure agreement by sending company information to my personal account.

## THEORIES OF RECOVERY

### COUNT I

**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200e, et seq., and 42 U.S.C § 1981A ("Title VII")**

32.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully stated herein.

33.

Defendant's reasons for firing Plaintiff is pretext. Defendant never had a policy stating employees could not send work documents to their personal email account. Defendant fired Plaintiff because he is an African-American man.

34.

Defendant never checked Debbie's computer for emails sent outside of the company. Debbie sent proprietary information to the same email address Plaintiff sent information to. Debbie was not fired because she is a Caucasian woman.

35.

Upon information and belief, other employees have sent proprietary information to their personal email address. Defendant did not inspect these employees computer for emails. Defendant did not inspect these employees because they are not African-American.

36.

Defendant never had a good faith belief Plaintiff violated the policy stated in Exhibit C. Defendant knew employees were sending information to their personal email address. Defendant never knew of any facts that would support the belief Plaintiff was violating the terms of Exhibit C. Defendant made up these false allegations because Plaintiff is African-American.

37.

Defendant's actions as set out above constitute an actionable violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 200e, et seq., and 42 U.S.C § 1981A ("Title VII").

38.

As a result of Defendant's actionable conduct Plaintiff is entitled to damages – general, compensatory, liquidated, and punitive – in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

39.

Plaintiff is entitled to an award of litigation expenses and attorney's fees according to relevant law.

40.

Plaintiff is also seeking injunctive relief under federal authority. Plaintiff is asking the court to prohibit Defendant from discriminating against all present and future employees protected under federal authority. Plaintiff is also asking the court to require Defendant's employees to take a class in discrimination.

## COUNT II

## The Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981")

### 41.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully stated herein.

### 42.

All employees working for Defendant has a contractual right to report dangers conditions to OASH. This right is given to employees who are working as at-will employees. This right is also granted under Georgia law. See O.C.G.A. 34-2-10. This right is granted to African-Americans and other racial groups.

### 43.

Defendant fired Plaintiff because he is African-American and he reported problems to OASH and the EEOC. As an African-American, Plaintiff has the right to force the provisions of his work contract.

### 44.

Defendant's reasons for firing Plaintiff is pretext. Defendant never had a policy stating employees could not send work documents to their

personal email account. Defendant fired Plaintiff because he is an African-American man.

45.

Defendant never checked Debbie's computer for emails sent outside of the company. Debbie sent proprietary information to the same email address Plaintiff sent information to. Debbie was not fired because she is a Caucasian woman.

46.

Upon information and belief, other employees have sent proprietary information to their personal email address. Defendant did not inspect these employees computer for emails. Defendant did not inspect these employees because they are not African-American.

47.

Defendant never had a good faith belief Plaintiff violated the policy stated in Exhibit C. Defendant knew employees were sending information to their personal email address. Defendant never knew of any facts that would support the belif Plaintiff was violating the terms of Exhibit C. Defendant made up these false allegations because Plaintiff is African-American.

48.

Defendant's action as set out above constitute an actionable violation of The Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").

49.

As a result of Defendant's actionable conduct Plaintiff is entitled to damages – general, compensatory, liquidated, and punitive – in an amount to be proven at trial and awarded according to the enlightened conscience of the jury.

50.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

51.

Plaintiff is also seeking injunctive relief under federal authority. Plaintiff is asking the court to prohibit Defendant from discriminating against all present and future employees protected under federal authority. Plaintiff is also asking the court to require Defendant's employees to take a class in discrimination.

# COUNT III

## Retaliation under 42 U.S.C. § 2000e-(3)(a), and 42 U.S.C. § 1981, <u>Cbocs West, Inc. v. Humphries</u>, 128 S.Ct. 1951 (2008)

### 52.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully stated herein.

### 53.

Defendant fired Plaintiff because he made a complaint with the EEOC office.

### 54.

Defendant's reasons for firing Plaintiff is pretext. Defendant never had a policy stating employees could not send work documents to their personal email account. Defendant fired Plaintiff because he is an African-American man.

### 55.

Defendant never checked Debbie's computer for emails sent outside of the company. Debbie sent proprietary information to the same email address Plaintiff sent information to. Debbie was not fired because she is a Caucasian woman.

56.

Upon information and belief, other employees have sent proprietary information to their personal email address. Defendant did not inspect these employees computer for emails. Defendant did not inspect these employees because they are not African-American.

57.

Defendant never had a good faith belief Plaintiff violated the policy stated in Exhibit C. Defendant knew employees were sending information to their personal email address. Defendant never knew of any facts that would support the belief Plaintiff was violating the terms of Exhibit C. Defendant made up these false allegations because Plaintiff is 40 years old.

58.

Defendant's actions as set out above constitutes Retaliation under 42 U.S.C. § 2000e-(3)(a), and 42 U.S.C. § 1981, Cbocs West, Inc. v. Humphries, 128 S.Ct. 1951 (2008).

59.

As a result of Defendant's actionable conduct Plaintiff is entitled to damages – general, compensatory, liquidated, and punitive – in an amount to

be proven at trial and awarded according to the enlightened conscience of a jury.

60.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

61.

Plaintiff is also seeking injunctive relief under federal authority. Plaintiff is asking the court to prohibit Defendant from discriminating against all present and future employees protected under federal authority. Plaintiff is also asking the court to require Defendant's employees to take a class in discrimination.

## COUNT IV

### Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq., ("ADEA")

62.

Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 31 as if fully stated herein.

63.

Defendant fired Plaintiff because he is over the age of 40.

64.

Defendant's action as set out above constitute an actionable violation of Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq., ("ADEA").

65.

As a result of Defendant's actionable conduct Plaintiff is entitled to damages – general, compensatory, liquidated, and punitive – in an amount to be proven at trial and awarded according to the enlightened conscience of the jury.

66.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

67.

Plaintiff is also seeking injunctive relief under federal authority. Plaintiff is asking the court to prohibit Defendant from discriminating against all present and future employees protected under federal authority. Plaintiff is also asking the court to require Defendant's employees to take a class in discrimination.

## COUNT VII

## Punitive Damages

### 68.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

### 69.

Defendant's actions constitutes willful misconduct, demonstrating wantonness, oppression, and the entire want of care which would raise the presumption or conscious indifference to the consequences that entitle Plaintiff to recover punitive damages pursuant to the punitive damage provisions of the statuary causes of action hereinabove stated.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

1. that Summons be issued and Defendant be served as provided by law;

2. that Plaintiff be awarded judgment in Plaintiff's favor with respect to all contentions in the complaint;

3. that Plaintiff be awarded actual and liquidated damages as proven at trial;

4. that Plaintiff be awarded nominal damages in an amount to be determined by the enlightened conscience of an impartial jury;

5. that Plaintiff be awarded compensatory damages for mental and emotional suffering in an amount to be determined by the enlightened conscience of an impartial jury;

6. that Plaintiff be awarded back pay;

7. that Plaintiff be reinstated to Plaintiff's rightful employment position;

8. that Plaintiff be awarded front pay if reinstatement is not possible;

9. that the court enter injunctive relief against Defendant. Defendant be enjoined from discriminating against all classes of people protected under the legal authority cited above;

10. that Plaintiff be awarded prejudgment interest;

11. that Defendant be forced to teach its employees all laws prohibiting discrimination;

12. that Plaintiff be awarded punitive damages in an amount to be determined by a jury at trial to be sufficient to prevent such conduct as alleged herein from occurring in the future, and commensurate with the harm done to Plaintiff;

13. that Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

14. that all issues triable by a jury be tried by a jury;

15. that all cost of this action be taxed to Defendant; and

16. for such other and further relief as unto this Court may seem just and equitable in the premises.


Respectfully submitted this Monday, April 13, 2015


s/ Michael O. Mondy
Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
925B Peachtree Street NE #329
Atlanta, Georgia 30309
mondy@mondypc.com